THOMPSON, Presiding Judge.
M.B. ("the mother") appeals a judgment of the Lee Juvenile Court ("the juvenile court") denying her request for a return of custody of her minor child from B.B. and A.B. ("the custodians").
The record indicates the following pertinent procedural history and facts. The mother has lived in Colorado for the last 15 years. The child at issue was born in February 2014 in Colorado. The mother ended her relationship with R.L., who is the child's alleged father, in January 2015, when the child was almost 11 months old, and she moved with the child to a new apartment in the Denver, Colorado, area.[1] On approximately January 10, 2015, the mother was arrested for driving under the influence after being stopped for a minor traffic violation.[2] Following that arrest, the Colorado Department of Human Services ("CDHS") took the child into protective custody. Testimony from A.B. indicates that the child spent 19 days in foster care in Colorado. Thereafter, with the mother's permission, CDHS contacted the custodians, who live in Alabama, about serving as a relative placement for the child, and they agreed to take the child.[3] The child has lived in the custodians' home since January 29, 2015.
*130 At some point shortly after the child came to live with them, the custodians filed a dependency petition in the juvenile court. The record on appeal in this action does not contain that dependency petition or indicate the date on which it was filed. On May 10, 2015, approximately three and a half months after the child was placed in the custodians' home, the juvenile court entered a pendente lite order based on the agreement of the parties. In that May 10, 2015, order, the juvenile court, among other things, found the child dependent and awarded pendente lite custody of the child to the custodians.[4]
On June 30, 2016, the mother filed a petition in the juvenile court in which she sought a return of custody of the child. The juvenile-court clerk docketed that petition as an .02 action, but it is clear that the mother's request was for a return of custody in the original dependency action and that the juvenile court properly treated it as such.[5]
The juvenile court conducted an ore tenus hearing. On February 14, 2017, the juvenile court entered a judgment in which it, among other things, found the child dependent, awarded custody of the child to the custodians, awarded the mother visitation, and ordered that the dependency action be closed.[6] The mother filed a postjudgment motion on February 16, 2017. The mother filed a notice of appeal before the juvenile court ruled on that motion and before the motion could be denied by operation of law. The mother's appeal was held in abeyance until March 2, 2017, when the postjudgment motion was deemed denied by operation of law, and it became effective on that date. Rule 4(a)(5), Ala. R. App. P.; see also M.G. v. J.T., 90 So.3d 762, 764 n. 2 (Ala. Civ. App. 2012). Thus, the mother's appeal was timely filed.
The mother's appeal focuses on her contention that the juvenile court's judgment finding the child dependent was not supported by the evidence. The mother has not addressed the issue of the juvenile court's subject-matter jurisdiction to consider the dependency action, and the custodians did not file a brief in this court. "This court may not presume ... that a statutory court of limited jurisdiction, like the juvenile court, ... has the prerequisite subject-matter jurisdiction over a particular matter." D.G. v. K.H., 155 So.3d 242, 243 (Ala. Civ. App. 2013). Rather, this court must take judicial notice of jurisdictional issues, even ex mero motu. K.R. v. Lauderdale Cty. Dep't of Human Res., 133 So.3d 396, 403-04 (Ala. Civ. App. 2013) ; M.B.L. v. G.G.L., 1 So.3d 1048, 1050 (Ala. Civ. App. 2008). We note that the parties may not confer jurisdiction on the juvenile court, even by agreement. K.R. v. Lauderdale Cty. Dep't of Human Res., 133 So.3d at 403-04.
*131 The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which is codified in Alabama at § 30-3B-101 et seq., Ala. Code 1975, governs a juvenile court's subject-matter jurisdiction over child-custody actions such as this one. According to the UCCJEA, a "child custody proceeding" is "[a] proceeding in a court in which legal custody, physical custody, or visitation with respect to a child is an issue." § 30-3B-102(4), Ala. Code 1975. The term "child custody proceeding" includes, among other things, "a proceeding for ... dependency ..., in which the issue [of custody or visitation] may appear." Id.; see also M.B.L. v. G.G.L., 1 So.3d at 1050 ("The UCCJEA addresses jurisdiction in matters that may be classified within the definition of a 'child custody proceeding,' including dependency proceedings in which the issue of a child's custody may arise."); and H.T. v. Cleburne Cty. Dep't of Human Res., 163 So.3d 1054, 1062 (Ala. Civ. App. 2014) (explaining that the UCCJEA applies to custody proceedings involving a child alleged to be dependent). A "child custody determination" is defined under the UCCJEA as "[a] judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." § 30-3B-102(3) ; see also D.B. v. Coffee Cty. Dep't of Human Res., 26 So.3d 1239, 1243 (Ala. Civ. App. 2009).
Section 30-3B-201(a), Ala. Code 1975, a part of the UCCJEA sets forth the exclusive jurisdictional basis for an Alabama court to exercise jurisdiction over an initial child-custody determination and provides:
"Except as otherwise provided in Section 30-3B-204, [Ala. Code 1975,] a court of this state has jurisdiction to make an initial child custody determination only if:
"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 30-3B-207 or [Section] 30-3B-208, [Ala. Code 1975,] and:
"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
"b. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or [Section] 30-3B-208; or
"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."
We note that the term "home state" is also defined under § 30-3B-102(7) of the UCCJEA as:
"The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of *132 a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of the child or any of the mentioned persons is part of the period."
In Ex parte Siderius, 144 So.3d 319, 324-25 (Ala. 2013), our supreme court noted that of the two definitions of "home state" in the UCCJEA, i.e., the one set forth in § 30-3B-102(7) and the one set forth in § 30-3B-201(a)(1), the definition set forth in § 30-3B-201(a)(1) is broader. The court then concluded that "we resolve the apparent conflict between the two sections, in keeping with the purposes of the UCCJEA, by applying the construction that finds the existence of a home state, rather than the one that finds that the children had no home state." Id. at 325.
It does not appear that, at the time the dependency action was initiated, Alabama could be said to be the child's "home state" under § 30-3B-201(a)(1) or § 30-3B-102(7). See Ex parte Siderius, supra (discussing the definitions of "home state" under the UCCJEA). The child had been in Alabama less than four months when the May 10, 2015, pendente lite dependency order was entered; again, the record does not indicate when the dependency action was initiated, but it was clearly initiated before the May 10, 2015, order was entered. Thus, it is not possible that the child was living in Alabama for the six months preceding the initiation of that action that might create "home state" jurisdiction in Alabama under the UCCJEA. Rather, the child had been living in Colorado for his entire life, i.e., 11 months, at the time he was removed from the mother's custody in Colorado in January 2015.
Although this court does not currently so decide, it appears that Colorado was the child's home state. The record currently before this court does not clearly indicate whether any action pertaining to the child had been filed by the custodians or by CDHS in Colorado, or if any such action had been transferred to the juvenile court pursuant to Colorado's version of the UCCJEA. We note that A.B. testified that the child had been in foster care in Colorado for 19 days before the child was moved to her home in late January 2015.[7] It is extremely doubtful that the State of Colorado would deprive the mother of her fundamental right to custody of her child by placing the child in foster care without first initiating a dependency action. However, the record before this court does not indicate whether such a Colorado dependency action was initiated and, if so, whether, after the child was moved to the custodians' home in Alabama, the Colorado courts declined to exercise jurisdiction over the child pursuant to provisions similar to § 30-3B-201(a)(2) or (3) in Colorado's version of the UCCJEA.
We acknowledge that, under certain circumstances, an Alabama court may take actions pertaining to a child under the emergency-jurisdiction provision of the UCCJEA. See § 30-3B-204, Ala. Code 1975. However, "a juvenile court exercising temporary emergency jurisdiction under § 30-3B-204 does not have jurisdiction to adjudicate dependency and award custody *133 by virtue of the limited jurisdiction provided to it." J.D. v. Lauderdale Cty. Dep't of Human Res., 121 So.3d 381, 385 (Ala. Civ. App. 2013). Thus, the juvenile court, if acting under § 30-3B-204, would arguably have had jurisdiction to enter the May 10, 2015, pendente lite order. However, in order to properly exercise subject-matter jurisdiction after utilizing emergency jurisdiction under the UCCJEA, the juvenile court would have had to comply with the requirements of § 30-3B-204, including provisions specifying that it communicate with a Colorado court that might have exercised jurisdiction over the child.[8] The record before this court contains no indication that the juvenile court has done so.
"The record is not conclusive with regard to the question of jurisdiction.... We are simply not presented with sufficient evidence to enable us to determine whether jurisdiction was proper in the juvenile court in this case." D.B. v. Coffee Cty. Dep't of Human Res., 26 So.3d at 1245. Thus, given the lack of evidence in this case pertaining to whether the juvenile court properly exercised jurisdiction over the dependency action, we reverse the judgment of the juvenile court and remand the cause for a timely determination by the juvenile court, based, if necessary, on its receipt of additional evidence, on the issue of its jurisdiction under the UCCJEA. D.B. v. Coffee Cty. Dep't of Human Res., supra ; M.J.P. v. K.H., 923 So.2d 1114, 1117 (Ala. Civ. App. 2005).
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.

The mother's testimony at the January 25, 2017, hearing in this action indicates that R.L. appeared at a 2015 hearing before the juvenile court on the custodians' dependency petition, which resulted in a May 10, 2015, order in which R.L. was adjudicated the father of the child, but that she had not seen him since that time. R.L. was not a party to the mother's action seeking the return of custody of the child and did not seek to intervene.

The record indicates that the mother had been drinking at her new apartment but realized that her vehicle was illegally parked outside her new apartment, and she left the child in the apartment while she moved the vehicle; she was stopped by law-enforcement officers while doing so.

The mother alleged in a filing in the juvenile court that she has no relationship to the custodians but that one of them is the child's second cousin.

That May 10, 2015, order specified:
"The parties are given until [July 1, 2016,] to resolve dependency and should at a minimum accomplish the requirements set out in this order. Any request for a return of custody or modification in this matter should be filed prior to said date.
Unless such a request for modification has been previously filed with the Court, the custodial provisions of this order will automatically become terminal upon said date. Any request for modifications on or after said date will require a new petition and the [Ex parte] McLendon [, 455 So.2d 863 (Ala. 1984),] standard may apply."

The mother's petition for a return of custody was filed before the July 1, 2016, deadline set forth in the May 10, 2015, order, see note 4, supra, and there is no indication in the record that the juvenile court applied the Ex parte McLendon, 455 So.2d 863 (Ala. 1984), standard appropriate for a modification action.

Although the February 14, 2017, judgment is designated as being entered in case no. JU-15-303.02, it is clear that that judgment pertains to the original dependency action initiated by the custodians.

We also note that, although statements in an appellate brief are not evidence, the mother represents in her brief submitted to this court that "[t]he child was removed from the mother's custody in Colorado in January 2015." We do not think it is likely that, in the short time the child remained in Colorado following the mother's arrest, a Colorado court would have entered a custody determination under the UCCJEA. However, if such a custody determination was made by a Colorado court, that court would maintain continuing jurisdiction over the child, and Alabama would have jurisdiction to modify such a custody determination only under limited circumstances. See § 30-3B-203, Ala. Code 1975; and M.J.P. v. K.H., 923 So.2d 1114, 1117 (Ala. Civ. App. 2005).

This court makes no determination whether the juvenile court could properly exercise jurisdiction pursuant to § 30-3B-204 under the facts of this case.